IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


ROLAN W. WALTON and           §
SUZANNE L. WALTON,            §
                             §
          Plaintiffs,         §
                             §
v.                           §
                             §
WELLS FARGO BANK, N.A. and BANK §
OF AMERICA NATIONAL ASSOCIATION §      CIVIL ACTION NO. H-10-2875
AS SUCCESSOR BY MERGER TO     §
LASALLE BANK NATIONAL         §
ASSOCIATION, AS TRUSTEE FOR THE §
HOLDERS OF PRIME MORTGAGE     §
TRUST, MORTGAGE PASS-THROUGH  §
CERTIFICATES, SERIES 2004-CL1, §
                             §
          Defendants.         §


<u>**MEMORANDUM OPINION AND ORDER**</u>


Rolan and Suzanne Walton bring this action against Wells Fargo
Bank, N.A. ("Wells Fargo") and Bank of America National Association
as Successor by Merger to LaSalle Bank National Association, as
Trustee for the Holders of Prime Mortgage Trust, Mortgage Pass-
Through Certificates, Series 2004-CL1 ("Bank of America") alleging
breach of contract, wrongful foreclosure, tortious interference
with contract, intentional infliction of emotional distress, and
seeking injunctive and declaratory relief.  Pending before the
court are Defendants' Motion for Summary Judgment (Docket Entry
No. 14), defendants' Motion Requesting Entry of Summary Judgment
(Docket Entry No. 15), Defendants' Motion to Strike Plaintiffs'
Response to Defendants' Motion for Summary Judgment (Docket Entry

No. 19), and Plaintiffs' Motion for Leave to File Summary Judgment Response and Request for Oral Argument (Docket Entry No. 21).  For the reasons explained below, the defendants' motion for summary judgment will be granted; the defendants' motions for entry of summary judgment and to strike the plaintiffs' response will be denied; the plaintiff's motion for leave to file summary judgment response will be granted; and the plaintiff's request for oral argument will be denied.

## I. <u>Factual and Procedural Background</u>

### A. The Waltons' Mortgage Loans

This action concerns Wells Fargo's allegedly wrongful servicing of a mortgage loan that was issued to Rolan and Suzanne Walton for their home in Harris County, Texas.  The Waltons purchased the property in 1992 and constructed their home on it in 1993.[1]  On April 4, 1994, the Waltons executed a promissory note payable to Guardian Savings & Loan Association in consideration for a renewal and extension of their mortgage loan.[2]  The note was secured by a Deed of Trust on the Waltons' property (the "1994 Deed of Trust").[3]  As permitted by the terms of the 1994 Deed of Trust,

---

[1]Warranty Deed With Vendor's Lien, Document 1-3 to Defendant's Notice of Removal, Docket Entry No. 1, p. 15; Mechanic's Lien Contract, Document 1-3 to <u>id.</u>, p. 32.

[2]Promissory Note, Document 1-3 to <u>id.</u>, p. 39.

[3]Deed of Trust, Apr. 4, 1994 ("1994 Deed of Trust"), Document 1-4 to <u>id.</u>, p. 23.  The Waltons' original mortgage-loan documents were executed in 1992 and 1993.

the Waltons also executed an Escrow Waiver Agreement, which allowed them to distribute their property-tax payments directly to the Harris County Appraisal District ("HCAD") instead of into an escrow account maintained by the lender.[4]   Under the Escrow Waiver Agreement the Waltons were required to pay their property taxes on time when they became due, and in the event of default the lender was permitted to terminate the Escrow Waiver Agreement and create an escrow account.[5]

In April of 1999 the Waltons borrowed money to refinance their mortgage.   In consideration for the refinancing loan the Waltons executed a promissory note for $491,500 payable to Norwest Mortgage, Inc., secured by a Deed of Trust on the property (the "1999 Deed of Trust").[6]   The Waltons continued to make their property-tax payments directly to HCAD in accordance with the Escrow Waiver Agreement, which was renewed with the execution of the 1999 Deed of Trust.[7]   In terms similar to those of the Escrow

---

[4]Escrow Waiver Agreement Addendum to the Deed of Trust ("Escrow Waiver Agreement"), Document 1-4 to id., p. 30.

[5]Id. at 30-31.

[6]Deed of Trust, Apr. 12, 1999 ("1999 Deed of Trust"), Document 1-5 to id., p. 3.

[7]The Waltons contend that the Escrow Waiver Agreement is inapplicable to their breach-of-contract claim because it was not renewed with the 1999 Deed of Trust.   Plaintiffs' Supplemental Response to Defendants' Motion for Summary Judgment & Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment, Docket Entry No. 24, ¶¶ 7-9.   The record shows otherwise.
(continued...)

Waiver Agreement, the 1999 Deed of Trust provided that the Waltons "shall pay all taxes . . . attributable to the Property which may attain priority over [the 1999 Deed of Trust]" and that the Waltons "shall pay them on time directly to the person owed payment."[8]   In addition, the 1999 Deed of Trust provided that

> [The Waltons] shall promptly discharge any lien which has priority over [the 1999 Deed of Trust] unless [the Waltons]:  (a) agree[] in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender[.] . . .[9]

Paragraph Seven of the 1999 Deed of Trust further provided that

> if [the Waltons] fail[] to perform the covenants and agreements contained in [the 1999 Deed of Trust] . . . then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.  Lender's actions may include paying any sums secured by a lien which has priority over [the 1999 Deed of Trust] . . . .

> Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of [the Waltons] secured by [the 1999 Deed of Trust].  Unless [the Waltons] and Lender agree to other terms of payment, these amounts shall . . . be payable, with Interest, upon notice from Lender to [the Waltons] requesting payment.[10]

---

[7](...continued)
Initially, the Escrow Waiver Agreement was "incorporated into" and "amend[ed]" the 1994 Deed of Trust.  Escrow Waiver Agreement, Document 1-4 to Defendant's Notice of Removal, Docket Entry No. 1, p. 30.  When the 1999 Deed of Trust was executed, the 1994 Deed of Trust (and thus the Escrow Waiver Agreement) was "renewed" and "carried forward in full force and effect."  Renewal and Extension Rider, Document 1-5 to id., pp. 12, 14.

[8]1999 Deed of Trust, Document 1-5 to id., p. 4, ¶ 4.

[9]Id.

[10]Id. ¶ 7.

In 2008, through a series of assignments and acquisitions, Wells Fargo became the servicer of the Waltons' mortgage loan on behalf of Bank of America.[11]

## B.   The Waltons' Deferral of Their Property-Tax Payments

Under section 33.06 of the Texas Tax Code, homeowners who are either disabled or aged sixty-five and older may defer paying property taxes on their home as long as they own the home or live in the home.[12]   Tex. Tax Code § 33.06(a).   To obtain a deferral a qualified individual must file an affidavit "with the chief appraiser for the appraisal district in which the property is located."   Id. § 33.06(b).   Upon approval of the affidavit the collection of taxes on the property is deferred, but during the deferral period a tax lien remains on the property and interest continues to accrue.   Id. § 33.06(d).   On August 9, 2006, the Waltons submitted an affidavit with HCAD seeking such a deferral on the basis that they were at least sixty-five years old,[13] and HACD approved the deferral.[14]   The Waltons allege that they informed

---

[11]See Assignment of Deed of Trust, Oct. 27, 1999, Exhibit C to Defendants' Motion for Summary Judgment, Docket Entry No. 14, p. 1; Assignment of Deed of Trust, Mar. 18, 2004, Exhibit D to id., p. 1.

[12]Tax Deferral Affidavit, Document 1–6 to Defendant's Notice of Removal, Docket Entry No. 1, p. 14.

[13]Id.

[14]Tax Deferral for Account 1170310000017, Document 1–6 to id., p. 16.

Wells Fargo about the tax deferral and received no objection.[15]  For the next two years the Waltons made monthly payments on their mortgage loan in the amount of $3,227.87, and monthly interest-only payments on a separate home-equity loan in the amount of $957.97.[16]

## C.   Wells Fargo's Payment of the Waltons' Deferred Property Taxes

Wells Fargo contends that in mid-2008 it received delinquent tax notices from HCAD with respect to the Waltons' property, and that in response, "[t]o protect its lien interests," Wells Fargo paid HCAD $28,459.29 for the Waltons' 2006 and 2007 delinquent property taxes, plus $2,187.26 in accrued penalties,[17] for a total of $30,646.55.[18]  On July 9, 2008, Wells Fargo informed the Waltons by letter that it had "disbursed" their 2006 and 2007 property taxes to HCAD, as well as the applicable penalties, and that "[a]n escrow account was established in order to disburse these delinquent property taxes."[19]  The Waltons were given the option of

---

[15]Plaintiffs' Original Petition & Request for Injunctive Relief ("Plaintiffs' Petition"), Document 1-2 to id., p. 31 ¶ 20.

[16]See Wells Fargo Statement, May 20, 2010, Document 1-6 to id., p. 18; Plaintiffs' Petition, Document 1-2 to id., p. 31 ¶ 21.

[17]The defendants concede that the penalty payments were unnecessary since the Waltons' tax deferral satisfied the criteria set out in section 33.06 of the Texas Tax Code.  Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment Subject to Motion to Strike Plaintiffs' Response, Docket Entry No. 20, ¶ 14.

[18]Defendants' Motion for Summary Judgment, Docket Entry No. 14, ¶ 16.

[19]July 9, 2008, Letter from Sheri Smith to Rolan Walton, Document 1-6 to Defendant's Notice of Removal, Docket Entry No. 1, p. 20.

either paying a $41,460.08 "escrow shortage" in one lump sum or spreading the payment out over twelve months, with new monthly mortgage payments of $7,764.22.[20]  The Waltons allege that they could not meet either option.[21]

The Waltons attempted to negotiate a resolution with Wells Fargo, arguing that Wells Fargo's payments to HCAD were unnecessary because the Waltons had lawfully deferred their property-tax payments.[22]  Wells Fargo refused to allow the tax deferral because of "the taxing authority's requirement to subordinate [Wells Fargo's mortgage lien] to the lien created by the property tax deferral" and because "[a]ny default that might occur on the property tax deferral lien could jeopardize [Wells Fargo's] interest in the property."[23]

In October of 2008 Wells Fargo proposed a modified payment plan by which the Waltons would pay the escrow shortage over a span of forty-eight months, with monthly mortgage payments of $5,172.96.[24]  Despite the reduction in the monthly payment amount, the Waltons struggled to make their mortgage payments and by mid-

---

[20]Id.

[21]Plaintiffs' Petition, Document 1-2 to id., p. 32 ¶ 22.

[22]See Oct. 3, 2008, Letter from Sheri Smith to Rolan Walton, Document 1-6 to id., p. 22.

[23]Id.

[24]Oct. 27, 2008, Letter from Sheri Smith to Rolan Walton, Document 1-6 to id., p. 24.

2009 had listed their home for sale.[25]  In June of 2009 the Waltons again attempted to convince Wells Fargo that its decision to pay HCAD the 2006 and 2007 property taxes was unnecessary and was made without consulting the Waltons, and that the tax deferral did not jeopardize Wells Fargo's mortgage lien because the Waltons had built up enough equity to pay the taxes when the home was sold.[26] Wells Fargo informed the Waltons that it paid the taxes because the tax deferral placed its mortgage lien at risk.[27]

The Waltons eventually fell behind on their monthly payments, and on March 21, 2010, Wells Fargo notified the Waltons that they were in default of their loan and the 1999 Deed of Trust and owed Wells Fargo $20,890.82 by April 20, 2010, to cure the default.[28] On April 29, 2010, Wells Fargo informed the Waltons that because they had not cured the default the entire balance of the loan was due and payable.[29]  On June 25, 2010, a debt-collection firm notified the Waltons that Wells Fargo was initiating a foreclosure

---

[25]June 25, 2009, Letter from Rolan Walton to Pat Smith, Document 1-6 to id., pp. 28, 29.

[26]Id. at 28-29.

[27]July 11, 2009, Letter from Pat Smith to Rolan and Suzanne Walton, Document 1-6 to id., p. 31.

[28]Mar. 21, 2010, Letter from Wells Fargo to Rolan Walton, Document 1-7 to id., p. 9.

[29]Apr. 29, 2010, Letter from Wells Fargo to Rolan Walton, Document 1-7 to id., p. 18.

on their property pursuant to the 1999 Deed of Trust, and that the foreclosure sale would take place on August 3, 2010.[30]

### D.   The Waltons' Lawsuit

On July 29, 2010, the Waltons filed suit in Texas state court alleging that Wells Fargo's payment of the deferred property taxes and subsequent increase of the Waltons' mortgage payments constituted breach of contract, wrongful foreclosure, tortious interference with contract, and intentional infliction of emotional distress, and seeking injunctive and declaratory relief.[31]   Wells Fargo subsequently postponed the scheduled foreclosure, and on August 12, 2010, it removed the action on the basis of diversity jurisdiction (Docket Entry No. 1).[32]   Meanwhile, on October 29, 2010, the Waltons sold their home for $875,000, and with the proceeds paid Wells Fargo the full amounts due and owing under their mortgage and home-equity loans.[33]   The parties failed to settle the dispute, however, and on April 27, 2011, Wells Fargo and

---

[30]June 25, 2010, Letter from Wells Fargo's attorneys to Rolan Walton, Document 1-7 to id., p. 25.  Wells Fargo initially set the foreclosure sale for June 1, 2010, but agreed to a postponement. Plaintiffs' Petition, Document 1-3 to id., p. 2 ¶ 31.

[31]Plaintiffs' Petition, Document 1-3 to id., pp. 2-6; Plaintiffs' Application for Temporary Restraining Order, Document 1-2 to id., p. 7.

[32]The parties do not dispute that the parties are completely diverse and that the amount in controversy exceeds the jurisdictional threshold.  28 U.S.C. § 1332(a).

[33]Settlement Statement (HUD-1), Exhibit J to Defendants' Motion for Summary Judgment, Docket Entry No. 14, p. 1.

Bank of America moved for summary judgment with respect to all of the Waltons' claims.

The defendants argue that the Waltons' breach-of-contract claim fails because the tax deferral placed the Waltons in default of the 1999 Deed of Trust and the Escrow Waiver Agreement and, thus, authorized Wells Fargo to pay the delinquent taxes and demand reimbursement from the Waltons.[34]  The defendants argue that the Waltons' claim for intentional infliction of emotional distress fails because as a matter of law defendants' conduct was not extreme and outrageous, and that the Waltons' remaining claims are moot.  The Waltons responded on July 18, 2011,[35] arguing that their breach-of-contract claim should survive summary judgment because the evidence shows that the property-tax deferral was not a breach of the loan documents.[36]

---

[34]Defendants' Motion for Summary Judgment, Docket Entry No. 14, pp. 11–13.

[35]The defendants move to strike the Waltons' response because it was filed past the due date stipulated in the court's local rules (Docket Entry No. 19).  The Waltons move for leave to file their response, asserting that they were unaware of the local rule requiring a response within 21 days of the filing of the initial motion (Docket Entry No. 21).  The defendants object to the Waltons' motion (Docket Entry No. 23).  The Waltons should not be penalized merely because their attorney was not familiar with the court's local rules.  Accordingly, the court will deny the defendants' motions and grant the Waltons' motion for leave to file a response.

[36]Plaintiffs' Response to Defendants' Motion for Summary Judgment ("Plaintiffs' Response"), Docket Entry No. 17, pp. 6–9.  The court has also considered the defendants' reply (Docket Entry No. 20), the Waltons' supplemental response (Docket Entry No. 24), and the defendants' surreply (Docket Entry No. 26).

-10-

## II.   Summary-Judgment Standard

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(a).  Disputes about material facts are "genuine" if under the evidence a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S. Ct. at 2553-54).  If the moving party meets this burden, Rule 56(c) requires the nonmovant to show that specific facts exist over which there is a genuine issue for trial.  Id. (citing Celotex, 106 S. Ct. at 2553-54).  A party asserting that a fact is genuinely disputed must support the assertion by either (1) citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

-11-

affidavits or declarations, admissions, and interrogatory answers, or (2) showing that the materials cited do not establish the absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1)(A)-(B).  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000).

### III.  Analysis

### A.   The Waltons' Claim for Breach of Contract

In Texas "the essential elements of a breach of contract claim are:  (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  Mullins v. TestAmerica, Inc., 564 F.3d 386, 418 (5th Cir. 2009) (citing Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).  The Waltons allege that the loan documents relating to their property and, "more particularly, the 1999 [Deed of Trust], are valid contracts," and that the Waltons "fully performed their obligations under the agreements."[37]  The Waltons allege that the defendants breached the agreements by (1) paying the 2006 and 2007 property taxes and

---

[37]Plaintiffs' Petition, Document 1-3 to Defendant's Notice of Removal, Docket Entry No. 1, p. 4 ¶ 35.

(2) declaring the plaintiffs in default of the 1999 Deed of Trust and demanding payment of the full property-tax amount even though the property taxes were not due.[38]  The Waltons further allege that the defendants' breach interfered with the Waltons' ability to perform under the terms of the loan documents, causing them financial harm.[39]

The defendants argue that they are entitled to summary judgment because Wells Fargo was authorized under the loan agreements to pay the property taxes and to demand reimbursement of the tax payments when it discovered that the Waltons had deferred their tax payments.[40]  Under the Escrow Waiver Agreement the Waltons were permitted to avoid monthly escrow payments if they made "on-time and complete payments" to HCAD "as they [became] due and owing."[41]  Similarly, under the 1999 Deed of Trust the Waltons were required to "pay all taxes . . . attributable to the Property which may attain priority over [the 1999 Deed of Trust]," and to pay the taxes "on time directly to [HCAD]."[42]

The Waltons argue that the deferral of their property tax payments was not in violation of these provisions because under the

---

[38]Id. at 4 ¶ 36.

[39]Id. at 5 ¶ 36.

[40]Defendants' Motion for Summary Judgment, Docket Entry No. 14, ¶ 25.

[41]Escrow Waiver Agreement, Document 1-4 to Defendant's Notice of Removal, Docket Entry No. 1, p. 30.

[42]1999 Deed of Trust, Document 1-5 to id., p. 4 ¶ 4.

tax-deferral statute their property taxes were not "due and owing"
until the 181st day after they either sold or moved out of their
home, Tex. Tax Code § 33.06(b), and thus there was no basis for
Wells Fargo to conclude that the payments were not "on time."[43]
Under the plain terms of the Escrow Waiver Agreement, however, a
"default" occurred if "any payment made or to be made by [the
Waltons] . . . include[d] any accrual of . . . interest[.]"[44]
Section 33.06 of the Tax Code states that "interest continues to
accrue during the period collection of taxes is deferred."
Tex. Tax Code § 33.06(d). The court is therefore not persuaded by
the Waltons' argument that its deferral was in accordance with the
timing provisions of the loan agreements.

Even assuming, however, that the Waltons' interpretation is
correct, it fails to account for the provision in Paragraph Four of
the 1999 Deed of Trust that required the Waltons to "promptly
discharge any lien which ha[d] priority over [the 1999 Deed of
Trust] unless [the Waltons] . . . agree[d] in writing to the
payment of the obligation secured by the lien in a manner
acceptable to [the] Lender," or satisfied other listed exceptions
not relevant to these facts.[45]   Section 33.06 of the Tax Code

---

[43]Plaintiffs' Response, Docket Entry No. 17, ¶¶ 11-12.

[44]Escrow Waiver Agreement, Document 1-4 to Defendant's Notice
of Removal, Docket Entry No. 1, p. 30 ¶ III.

[45]Id.  The loan agreements do not support the Waltons' argument
in their Response, Docket Entry No. 17, ¶ 2, that the 1999 Deed of
Trust conditioned this provision on a finding by the lender that
its inferior lien was in jeopardy.

-14-

provides that a property-tax deferral creates a tax lien that
remains on the property and accrues interest during the deferral
period.  Tex. Tax Code § 33.06(d).  Thus, the Waltons' 2006 tax
deferral created a tax lien on their property.  Moreover, the tax
lien that was created by the deferral took priority over Wells
Fargo's mortgage lien.  See id. § 32.05(b)(2).  Accordingly, the
Waltons were obligated to discharge the tax lien unless their
deferral was acceptable to their lender, and other than the
Waltons' bare assertions there is no evidence in the record that
demonstrates that the Waltons notified their lender of the
deferral, much less ensured that their lender approved of the
deferral.[46]  The Waltons' tax deferral did not excuse them of their
prior obligation under the 1999 Deed of Trust.  See Lyles v.
Deutsche Bank Nat'l Trust Co., 2011 WL 96591, at  *3 (S.D. Tex.
Jan. 11, 2011) (unreported).

        The 1999 Deed of Trust further provides that if the Waltons
"fail[ed] to perform the covenants and agreements contained in [the
1999 Deed of Trust], . . . then Lender may do and pay for whatever
is necessary to protect the value of the Property and Lender's
rights in the Property," including "paying any sums secured by a
lien which has priority over [the 1999 Deed of Trust.]"[47]  Because

---

        [46]See, e.g., Plaintiffs' Petition, Document 1-2 to Defendant's
Notice of Removal, Docket Entry No. 1, p. 31 ¶ 20.

        [47]1999 Deed of Trust, Document 1-5 to id., p. 5 ¶ 7.  Although
under Paragraph Four of the 1999 Deed of Trust the lender had the
                                                    (continued...)

the Waltons created a tax lien on the property that took priority over Wells Fargo's lien, Wells Fargo was authorized to pay the delinquent taxes to discharge the lien.  Under the 1999 Deed of Trust those amounts became "additional debt of [the Waltons] secured by [the 1999 Deed of Trust]" and became "payable, with interest, upon notice from Lender to [the Waltons] requesting payment."[48]

Wells Fargo was also entitled to create an escrow account for the tax payments because under the Escrow Waiver Agreement a default occurred when the Waltons allowed their property-tax payments to accrue interest.[49]  In the event of default Wells Fargo was permitted to terminate the Escrow Waiver Agreement and "immediately upon termination require [the Waltons] to establish and maintain funds for [the property-tax payments] in an Escrow Account with Lender."[50]

The defendants have met their burden to show that there is not a genuine factual dispute with respect to whether Wells Fargo was contractually authorized to pay the Waltons' delinquent taxes and

---

[47](...continued)
option of providing the Waltons with a notice identifying the lien, the lender was not required to do so.  Id. at 4 ¶ 4.  Furthermore, since the Waltons voluntarily created the tax lien they can hardly contend that they were unaware of its existence.

[48]1999 Deed of Trust, Document 1-5 to Defendant's Notice of Removal, Docket Entry No. 1, p. 5 ¶ 7.

[49]Escrow Waiver Agreement, Document 1-4 to id., p. 30 ¶ III.

[50]Id. at 31 ¶ V.

to demand that the Waltons reimburse Wells Fargo for the tax payments.   Because the Waltons have not presented evidence to convince a reasonable jury that the defendants breached the loan agreements, the court will grant the defendants' motion for summary judgment with respect to the Waltons' breach-of-contract claim.

**B.   The Waltons' Claim for Intentional Infliction of Emotional Distress**

The defendants argue that they are entitled to summary judgment with respect to Waltons' claim for intentional infliction of emotional distress because as a matter of law their conduct was not extreme and outrageous.[51]   To recover damages for intentional infliction of emotional distress the Waltons must prove that (1) the defendants acted intentionally or recklessly; (2) the defendants' conduct was extreme and outrageous; (3) the defendants' actions caused the Waltons emotional distress; and (4) the resulting emotional distress was severe.   Hoffmann-La Roche Inc. v. Zeltwanger, 144 S.W.3d 438, 445 (Tex. 2004).   Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."   Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993) (internal quotations omitted).   Whether conduct is extreme and outrageous is a question for the court to decide in the

---

[51]Defendants' Motion for Summary Judgment, Docket Entry No. 14, ¶ 34.

first instance, but if reasonable minds may differ, it is a question for the jury.  Zeltwanger, 144 S.W.3d at 445.

The Waltons allege that Wells Fargo's payment of the deferred property taxes and demand that the Waltons provide reimbursement through increased monthly mortgage payments was extreme and outrageous conduct.[52]  The court concludes that because Wells Fargo's conduct was authorized by the loan agreements, which the Waltons voluntarily entered into, a reasonable jury could not determine that Wells Fargo's conduct was extreme or outrageous. The court will therefore grant the defendants' motion for summary judgment with respect to the Waltons' claim for intentional infliction of emotional distress.

**C.   The Waltons' Remaining Claims**

The defendants argue that the Waltons' claims for wrongful foreclosure, tortious interference with contract, and injunctive and declaratory relief are moot.[53]  "Mootness is 'the doctrine of standing in a time frame.  The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'"  Center for Individual Freedom v. Carmouche, 449 F.3d 655, 661 (5th Cir. 2006) (quoting United States Parole Comm'n v. Geraghty, 100 S. Ct. 1202,

---

[52]Plaintiffs' Petition, Document 1-3 to Defendant's Notice of Removal, Docket Entry No. 1, p. 6 ¶ 45.

[53]Defendants' Motion for Summary Judgment, Docket Entry No. 14, ¶¶ 27-33.

1209 (1980)). "Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." <u>Id.</u>

### 1.   Wrongful Foreclosure

The fact that there was not a foreclosure renders the Waltons' claim for wrongful foreclosure moot.  <u>See Diversified, Inc. v. Gibraltar Sav. Ass'n</u>, 762 S.W.2d 620, 623 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (explaining that a mortgagor's remedies for wrongful foreclosure must follow a foreclosure).

### 2.   Tortious Interference with Contract

The defendants argue that the Waltons' claim for tortious interference with a contract is also moot and, alternatively, that "the undisputed facts establish their affirmative defense of justification as a matter of law.[54]"  To recover under a claim for tortious interference with a contract the Waltons must prove that (1) a contract existed between the Waltons and a third party, (2) the defendants willfully and intentionally interfered with that contract, (3) the interference proximately caused the Waltons damage, and (4) the Waltons suffered actual damage or loss. <u>Butnaru v. Ford Motor Co.</u>, 84 S.W.3d 198, 207 (Tex. 2002).  A defendant may defeat liability, however, by proving the affirmative defense that its conduct was privileged or justified, as long as

---

[54]Defendants' Motion for summary Judgment, Docket Entry No. 14, p. 17.

that conduct was not illegal or tortious.  <u>Id.</u>  The Waltons allege

that Wells Fargo intentionally interfered with their tax-deferral

agreement with HCAD when Wells Fargo unilaterally paid the Waltons'

property taxes.[55]  Regardless of the defendants' mootness argument,

the court concludes that the summary-judgment evidence shows that

Wells Fargo's conduct was justified.  The Waltons entered into the

loan agreements before they filed for a tax deferral, and under the

loan agreements Wells Fargo was entitled to make payments to

discharge a superior lien.  Accordingly, because there is no

genuine factual dispute that the Waltons' conduct was justified,

the court will grant the defendants' motion for summary judgment

with respect to the Waltons' tortious-interference claim.

          3.  <u>Injunctive Relief</u>

     To obtain injunctive relief the Waltons must prove (1) a cause

of action against the defendant, (2) a probable right to the relief

sought, and (3) a probable, imminent, and irreparable injury in the

interim.  <u>Butnaru</u>, 84 S.W.3d at 204.  The Waltons allege that

without injunctive relief they will experience immediate and

irreparable harm because the defendants "will foreclose on their

property and [the Waltons] will lose their property and all of the

money previously invested in it without having a fair opportunity

to protect that investment."[56]  The court concludes that the

_____

     [55]Plaintiffs' Petition, Document 1-3 to Defendant's Notice of
Removal, Docket Entry No. 1, p. 5 ¶ 42.

     [56]<u>Id.</u> at 7-8, ¶ 52.

Waltons' claim for injunctive relief is moot because after the commencement of this action the Waltons avoided foreclosure, sold their property, and paid off their mortgage loans in full.

    4.  <u>Declaratory Relief</u>

The Waltons seek nineteen declarations concerning whether the defendants' property-tax payments, demands for reimbursement, and notices of foreclosure violated section 51.002 of the Texas Property Code, the 1999 Deed of Trust, and the other loan documents. The Waltons' first three claims for declaratory relief concern section 51.002 of the Texas Property Code, which governs non-judicial foreclosure sales. Because the Waltons' home was not foreclosed on, these claims are moot. The remaining sixteen claims seek declarations as to whether the defendants' conduct violated the 1999 Deed of Trust or section 33.06 of the Texas Tax Code. As discussed above, under the terms of the 1999 Deed of Trust and Escrow Waiver Agreement, Wells Fargo was authorized to pay the Waltons' delinquent taxes to HCAD with or without notice to the Waltons, to demand reimbursement from the Waltons for the tax payments, to create an escrow account for purposes of the tax reimbursement, and to declare that the Waltons were in default of the loan agreements when they could not satisfy their monthly payments. Furthermore, Wells Fargo's conduct was not precluded by section 33.06 of the Texas Tax Code. Because the Waltons have not

-21-

raised a genuine factual dispute as to any of their declaratory-judgment claims, the court will grant the defendants' motion for summary judgment with respect to these claims.

## D.   Conclusion

The court concludes that because the Waltons have failed to raise a genuine factual dispute as to whether the defendants' conduct constitutes breach of contract, tortious interference with contract, or intentional infliction of emotional distress, or that the Waltons are entitled to declaratory relief, and because the Waltons' remaining claims are moot, the defendants are entitled to summary judgment with respect to all of the Waltons' claims. Because oral argument is unnecessary for the court to fully understand the parties' arguments, the court will deny the Waltons' request for a hearing.

## IV.   <u>Order</u>

For the reasons explained above, the Defendants' Motion for Summary Judgment (Docket Entry No. 14) is **GRANTED**. Defendants' Motion Requesting Entry of Summary Judgment (Docket Entry No. 15) is **DENIED as moot**. Defendants' Motion to Strike Plaintiffs' Response to Defendants' Motion for Summary Judgment (Docket Entry No. 19) is **DENIED**. Plaintiffs' Motion for Leave to File Summary

Judgment Response and Request for Oral Argument (Docket Entry No. 21) is **GRANTED in part and DENIED in part**.

   **SIGNED** at Houston, Texas, on this 2nd day of September, 2011.

                                   _____
                                         SIM LAKE
                              UNITED STATES DISTRICT JUDGE